**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| BRYANT D. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-292-TS |
| | ) | |
| VALERIE KALAMARAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Bryant D. Love, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983 after suffering a broken jaw when another jail inmate attacked him with a bar of soap encased in a sock. Love alleges that because the Defendants did not provide him with adequate medical care, his jaw did not heal correctly; as a result, he is unable to bite and chew properly. Love says his attacker was able to assault him because the jail failed to provide a safe environment. He names as Defendants the jail's medical supervisor, the county sheriff, and the jail warden.

Pursuant to 28 U.S.C. § 1915A, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6), which provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). In reviewing

> the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy Rule 8's notice pleading minimum and Rule 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks, and ellipsis omitted).

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, 127 S. Ct. 1955 (2007).

*Erickson v. Pardus*, 550 U.S. —, 127 S. Ct. 2197, 2200 (2007) (parallel citations omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic*, 127 S. Ct. at 1964–65 (quotation marks, ellipsis, citations and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at 1965 n.3(quotation marks and citation omitted). Nevertheless,

> [a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

*Erickson*, 127 S. Ct. at 2200 (quotation marks and citations omitted). However, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual

2

allegation." *Bell Atlantic*, 127 S. Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted)).

While the Eighth Amendment's proscription against cruel and unusual punishments applies only to persons convicted of crimes, and the rights of pretrial detainees are derived from the Fourteenth Amendment's Due Process Clause, "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments" is the same. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez,* 111 F.3d at 1373.

Following the attack on May 30, 2007, Love was promptly taken to the emergency room the same day. He complains, however, that he did not see a dental specialist, Dr. McMahon, until June 7, 2007, eight days later, when his jaw was wired. Between his visit to the emergency room and the initial appointment with the specialist, Love states that he was in "serious pain." The record shows that when Love saw the doctor on June 27, 2007, the doctor indicated the jaw was healing "well." [DE 1-2 at 1, 3]. Then, on July 3, 2007, Love fell from his bunk, damaging the wires and reinjuring his jaw. The nurse practitioner he saw two days after this accident opined that he needed to see the specialist before his next appointment, which was set for July 18, 2007,

3

thirteen days later. Although the nurse practitioner placed an order for him to see the specialist sooner, Love contends that he actually saw the doctor the day after his scheduled appointment. At that time, he asserts, Dr. McMahon told him that, because of the delay, either surgery or rewiring might be necessary to fix his jaw. The doctor removed the wires on August 16, 2007. Love maintains that his continuing difficulties in biting and chewing stem from the delay in seeing the doctor after the accident. [DE 1-2 at 4–6].

Love's broken jaw and the resultant pain presented serious medical needs. The issue is whether Love has alleged facts from which it may be reasonably inferred that the defendants were deliberately indifferent to them. Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208

(7th Cir. 1995). Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000).

Love's complaint shows that he received emergency medical care immediately after he was assaulted. He then saw a dental specialist eight days later, the first date that the specialist was available to the see the Plaintiff. [DE 1-2 at 6]. However, Love also argues that the defendants delayed in getting him to the doctor after he fell from his bunk. A nurse practitioner who examined him shortly afterwards believed he needed to see the doctor before his next scheduled appointment almost two weeks later. Love did not see the doctor before then, although he could have done so if the jail had arranged it. The reason why this was not done is not evident. But, given that the jail consistently responded to his medical needs in a timely fashion, it is not reasonable to infer that the failure to obtain an earlier appointment after Love reinjured his jaw was due to the jail's deliberate indifference rather than mere oversight, negligence, or unavailability of the specialist. The factual allegations are not enough to raise a right to relief for deliberate indifference above the speculative level. Moreover, until Dr. McMahon x-rayed his jaw at the check-up appointment, the extent of the damage from the fall was unknown, notwithstanding that the nurse practitioner thought Love should see the doctor before his check-up appointment. Even after examining the x-rays the doctor waited to see whether the jaw would heal properly. [DE 1-2 at 8].

Love charges that Ms. Kalamaras, the medical supervisor, changed his pain medication from what the doctor prescribed.[1] The record tends to show that on July 19, 2007, Dr. McMahon

---

[1] It is unclear whether this claim applies to Love's broken jaw or his back problems given that Love attached to the complaint grievances that he filed regarding the change from Flexaril, a medication prescribed for his back. [Ex. 2, DE 1-3 at 9-10]. To the extent Love attempts to include in this complaint a claim based on his back problem, the Court determines that Love does not show the defendants were "deliberately indifferent" to this other

5

prescribed Vicodin for Love's pain in his jaw. On July 28, 2007, jail personnel told him that he would be removed from the Vicodin on August 3, 2007. He had an appointment to see the doctor about the jaw pain the following week. [DE 1-3 at 6–7]. Thereafter, on August 4, 2007, he received two replacement pain medications, propoxyphene and naproxen. Love indicated that the former was effective while the latter was not. Love believed the jail's medical staff should have given him more than three tablets a day of the pain medication. [DE 1-3 at 9–10].

According to Love, the doctor's original prescription for Vicodin was refillable and directed that it be given to him as needed. Love received the Vicodin for sixteen days. It does not appear that Ms. Kalamaras changed the doctor's prescription, which was Vicodin for sixteen days, with a refill option. That course of treatment was completed on August 3, 2007.  After it ended, Love received a different pain medication when he continued to experience pain. He does not complain this medication was ineffective against the pain. Rather, he said it upset his stomach. [DE 1-2 at 4]. He does not allege the defendants knew or should have known that medication would cause him gastric problems. Although Dr. McMahon's prescription permitted the Vicodin to be dispensed "as needed" and could be refilled, it seems he left to the jail's medical personnel the determination of whether to refill the prescription after sixteen days.[DE 1-2 at 4].

Love does not deny that he received pain medications. This is the antithesis of indifference. Love's real complaint is that the jail did not provide Vicodin, his preferred medication."Under the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

---

medical need.

Giving Love the benefit of the inferences to which he is entitled at the pleading stage, the allegations set forth in the complaint show the jail's medical staff was not indifferent to his serious medical needs. If a plaintiff "pleads facts that show his suit is . . . without merit, he has pleaded himself out of court." *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (citations omitted).

Love further argues the sheriff and warden of the jail did not protect him. Prison officials cannot be expected to eliminate the possibility of all attacks because jails and prisons are always potentially dangerous and sometimes explosive. *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991) ("Prisons are dangerous places"). Thus, the right to reasonable protection under the Eighth Amendment does not include the right to protection from random acts of violence. *See McGill v. Duckworth*, 944 F.2d at 348 (stating that "some level of brutality . . . among prisoners is inevitable no matter what guards do"). Love does not allege that he knew he was going to be attacked nor that he warned anyone or asked for protection. Jails are bad environments and "[s]ome level of brutality . . . among [prisoners] is inevitable no matter what the guards do." *McGill*, 944 F.2d at 348.

Moreover, to the extent Love sues the sheriff and warden in their official capacities, he does not allege a jail policy or custom caused him injury. "To establish a claim in an official capacity suit, a plaintiff must show that the actions on which liability is predicated took place pursuant to a government policy or custom." *Hadi v. Horn*, 830 F.2d 779, 782 (7th Cir. 1987). To the extent they are sued in their individual capacities, there is no allegation of personal

7

involvement. Personal involvement is an element of every claim under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A plaintiff must allege facts showing the defendant's participation or direct responsibility for the conditions of which he complains. *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). Love does not allege that either the sheriff or the warden were personally involved in or even knew about the assault against him or the ensuing medical issues about which he complains. The complaint does not contain factual allegations that raise a right to relief against these Defendants above the speculative level, even on the assumption that all the allegations in the complaint are true.

As unfortunate and regrettable as the attack against Love was, the Constitution imposes no liability on any of these Defendants for it and its aftermath, and this case is DISMISSED pursuant to 28 U.S.C. § 1915A.

SO ORDERED on May 15, 2008.

 s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT  
FORT WAYNE DIVISION